Henry Clay Greenberg, J.
In an action brought against insurance companies to recover for damage to corporate plaintiff’s building and for loss of rent sustained as the result of a fire, defendants have moved for summary judgment dismissing the complaint and plaintiff has countered by requesting the court to strike all affirmative defenses with a direction for an assessment. The affirmative defenses relate principally to an appraisal award, the amount of which was tendered to but rejected by plaintiff, which then commenced this action.
After proof of loss was filed the insurers demanded an appraisal as provided in the policies pursuant to section 168 of the Insurance Law. The parties executed an appraisal agreement wherein respective appraisers were designated, who subsequently appointed an umpire with authority to act on matters of difference only when the appraisers failed to agree.
The pertinent facts as to the appraisal proceedings set forth in the detailed affidavit submitted by the umpire, are, upon analysis, found not to be substantially disputed in the affidavit of insured’s designated appraiser. The two appraisers had previously visited the premises and informed the umpire that they were in hopeless disagreement concerning the extent of the damage, giving him some time thereafter their respective itemized figures. Upon the umpire’s first visit with them at the premises the building was ‘ ‘ cubed ’ ’ to determine its actual cash value at the time of the fire and, the umpire states: “We came to the conclusion that the cost of reconstruction was less than the amount of insurance and laid that question aside as being the lesser important for the moment.” The insured’s appraiser does not directly contradict this statement but, referring to the provision limiting the umpire’s function to differences only between the respective appraisals, he maintains that the award signed by the umpire and insurers’ designated appraiser is improper because the two appraisers “ never disagreed nor agreed on the sound value of the [property] ”. This statement is, of course entirely consistent with the umpire’s version that it was agreed that sound value appraisal be put aside until later.
The appraisers and the umpire with various associates and experts retained for special items met at the premises on five, or six occasions from September, 1956 to March, 1957. The umpire then wrote the appraisers that he was ready to announce his award at a meeting to be held a few days later and asked them *521 to procure a check from each of the parties for its share of his hill.' Checks were delivered to him at this meeting and he then submitted his award and detailed recapitulation of itemized damage, showing the damage found by each of the appraisers and himself for such categories as carpentry, roofing, painting, piping, etc. The insured’s appraiser’s total was $176,548, the insurers’ appraiser’s $14,353, and the umpire’s $29,975. The insured’s appraiser asked and obtained an adjournment for the purpose of further discussion. In the interim a letter was received from attorneys representing the insured, advising that it was withdrawing from the appraisal because of 1 ‘ undue influence ” exerted upon the umpire during the course of the proceeding by the insurers’ appraiser. At the same time the insured’s appraiser resigned “ in view of the facts stated in that letter”. The “facts”, as appears from the papers now submitted on behalf of the insured, consist entirely of statements allegedly made by the insurers ’ appraiser and son in the presence of the umpire and insured’s appraiser. All of these ‘ ‘ facts ’ ’ were fully known at the time of payment of the umpire’s fee and the announcement of his award. It is significant, also, that the insured’s appraiser does not claim that the attempted undue influence affected the umpire and, indeed, gives him a clean bill of health, saying: “ I do not for a moment question Mr. Johnson’s integrity”. Since the additional affidavits submitted by plaintiff merely adopt and repeat its appraiser’s charges, there appears to be no substancé to the complaint that the umpire’s award was the product of undue influence.
After giving due notice to all parties the umpire signed the award for the damages previously announced by him and the insurers’ appraiser joined therein. Their award also included, as required by the policy and agreement, the amount of ‘1 actual cash value ” found by them.
As to the rent loss cause of action, it is clear that this subject was not even considered by the appraisers, as required before submission to the umpire, and that the oblique reference to it in the award is an afterthought. The defense of the short Statute of Limitations in the policy is untenable, since the insured was prevented from maintaining an action on the policy while the appraisal proceeding was pending and for some period thereafter. Plaintiff is accordingly entitled to summary judgment with an assessment to fix the rent loss.
The defendants are, however, entitled to summary judgment dismissing the first cause of action for direct fire damage. Plaintiff is bound by the appraisal award and is relegated to defendants’ tender of that amount.
*522 An appraisal proceeding, such as this, which indicates a sustained effort at considerable expense to determine scientifically the extent of damage, is entitled to every reasonable intendment and presumption of validity, provided the appraisers and umpire have substantially complied with the terms of the submission. Their award should not be denied effect in the absence of clear and strong proof amounting to fraud, bad faith or misconduct. An award is not to be invalidated merely because the respective appraisers zealously maintain a position favorable to the rights of the parties who nominated them.
The statements attributed to insurers’ appraiser are not of such scope as to justify insured’s withdrawal from the appraisal proceeding, particularly since no contention is even made that the umpire was influenced by them. But, even more importantly, it must be held that the insured waived whatever objections it might have had when, with knowledge of these circumstances, it paid without protest its share of the umpire’s fee and raised no question until after he had announced his award. To countenance such a withdrawal after the event by the defeated party would nullify the entire beneficent purpose underlying all appraisals and arbitrations.
The resignation of insured’s appraiser, moreover, made it impossible to comply in every detail with the provision of the agreement relating to actual cash value. That matter, as has been noted, was reserved by agreement for later determination. After his resignation the other two were left no choice but to agree in his absence on the cash value. In view of the amount of insurance, the type of property and damage involved, and the small extent of damage as compared with ^,ash value of the building, the item is not particularly important, but in any event there has been substantial compliance so far as same was not prevented by the insured’s withdrawal from the proceeding.
Finally, the award is not objectionable for failure to itemize cash value. Where damage to real estate, such as this building, is to be appraised, cash or sound value at time of fire may be stated in gross without apportionment among the constituent elements of the building (Campbell v. Union Mut. Fire Ins. Co., 124 A. 469 [R. I.]; 7 Couch, Cyclopedia of Insurance Law, § 1618, p. 5666; 7 Cooley’s Briefs on Insurance [2 ed.], p. 6176). Sufficient and substantial compliance with appraisal requirements is here manifested by itemizing the damage to constituent elements of the building, the sum total of which is considerably less than the sound value of the building.
Settle order accordingly.