■ HARVEY GLICKSMAN, Appellant-Respondent, v NORTH RIVER INSURANCE COMPANY, Respondent-Appellant. — Order and judgment unanimously modified and, as modified, affirmed, with costs to plaintiff, in accordance with the following memorandum: Plaintiff, a tenant in possession of real property in Rochester under a land contract, suffered property damage and loss of rents as a result of a fire. Article 10 of the contract of insurance issued by defendant contained a provision for an appraisal process in the event the parties failed to agree on the amount of loss. The appraisal process provided for either party to make a written demand for appraisal after which each would select a competent independent appraiser to be paid by the selecting party. The two appraisers were then to select an impartial umpire by agreement, failing which either party could apply to a court of record for appointment of an umpire. If the appraisers could agree, they were to submit a written report of the agreement to the company which would then constitute the amount of the loss. If they were unable to agree, the appraisers were required to submit their differences to the umpire. A written agreement signed by any two of the three appointees to the appraisal process would then constitute the amount of loss. After unsuccessfully attempting to negotiate plaintiff's loss claim, the parties executed a "memorandum of understanding" which contained the following provisions: "The parties shall proceed by appraisal according to the methods specified in Article '10' of the policy to determine (1) the actual cash value of the building and (2) the length of time reasonably required to rebuild the building after the loss." The parties then stipulated in writing for a court-appointed umpire without reference to the limitations contained in the "memorandum of understanding". Subsequently, the umpire submitted a letter to the parties which stated in terse terms that the total amount of damages caused by the fire in question was $49,005.87. No reference was made to any appraisals, disagreement between appraisers, or the "memorandum of understanding" nor was the amount of loss allocated between loss to the building and lost rents, both of which constituted plaintiff's claim. Defendant's appraiser subsequently agreed in writing with the umpire, thus at least facially making a majority under the appraisal procedure. Taking the position that the umpire's decision did not determine the questions submitted to him, plaintiff commenced the instant action to recover his damages from defendant under the contract of insurance. The cause of action seeking recovery under the policy also sought punitive damages and attorney's fees. In its answer, defendant raised several affirmative defenses, including the compulsory appraisal procedure. Defendant moved for partial summary judgment dismissing plaintiff's first cause of action claiming that the appraisal procedure was final and binding on the parties. Special Term granted the motion and severed plaintiff's second and surviving cause of action. In doing so, the court found that the parties agreed to submit their entire controversy to the umpire by utilization of the appraisal process contained in the policy. New York law permits parties to choose to be bound by an umpire's award (*Buchholz v United State Fire Ins. Co.*, 265 App Div 467, affd 293 NY 82; *Gansevoort Corp. v Palatine Ins. Co.*, 11 Misc 2d 518, affd 7 AD2d 720). "An appraisal proceeding * * * is entitled to every reasonable intendment and presumption of validity, *provided the appraisers and umpire have substantially complied with the terms of the submission*" (*Gansevoort Corp. v Palatine Ins. Co., supra*, p 522; emphasis supplied). Plaintiff asserts that the parties agreed to use the appraisal process only to ascertain two facts: the value of the building, and the reasonable time required to repair the damage. He further argues that once these facts were established

the parties themselves would be able to settle their dispute and full submission to the appraisal process was never intended. It is undisputed that the parties did not follow the appraisal process contained in the insurance contract. There was no written demand for an appraisal, no attempt to have appraisers select an umpire, and no effort to have the appraisers agree. The record is unclear as to whether plaintiff ever hired an appraiser, as the umpire's report refers to appraisers for the property owner and defendant but not for plaintiff. Nevertheless, the umpire's decision could still be binding on the parties if they agreed to be so bound by other documents. In the "memorandum of understanding" in which defendant agreed to make an advance payment the parties agreed to "proceed by appraisal" under the policy terms, but for a clearly limited purpose. Also to be considered in seeking a determination of what the parties intended is the stipulation by which they agreed to have the court appoint an umpire. The stipulation, however, merely states that the Supreme Court will designate an umpire "as defined" by the insurance policy, without stating what the umpire is to decide. The stipulation and "memorandum of understanding" were executed by the parties about three months apart and while negotiations between them were continuing. Whatever the umpire intended his decision to cover, he did not make the factual findings that plaintiff agreed to be bound by. In urging that the stipulation, wherein the parties agreed to have Supreme Court appoint an umpire, constituted a complete submission by the parties to the appraisal process binding plaintiff to the umpire's decision, defendant has the burden of establishing that the construction it seeks to put on the stipulation is the only construction which can fairly be placed thereon. Furthermore, in construing the various documents at issue the court should consider the circumstances surrounding their execution and the purpose of the parties in making the agreements so as to give them a fair and reasonable interpretation (see *Dowdle v Richards*, 2 AD2d 486, 489). Considering these principles, the proof at Special Term was inadequate to support defendant's motion for summary judgment dismissing plaintiff's first cause of action. In reversing the judgment dismissing plaintiff's first cause of action, we note that the court did not err in dismissing that part of plaintiff's first cause of action, seeking punitive damages and attorney's fees. At the time of the fire there was in existence another insurance policy issued to plaintiff by Merchants and Businessmen's Mutual Insurance Company. A separate action is pending over the refusal of that company to make payment to plaintiff. In the interests of judicial economy and common questions of fact, the two cases should be tried jointly. This will also have the desired effect of reducing the possibility of inconsistent verdicts with regard to value and loss. (Appeals from order and judgment of Supreme Court, Monroe County, Mastrella, J. — dismiss cause of action.) Present — Dillon, P. J., Hancock, Jr., Callahan, Doerr and Moule, JJ.